FILED
2010 Jun-17 PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DIRECTIONAL PUBLISHING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 09-B-0404-S** |
| | ) | |
| **TAMSAN DESIGN, INC.; STEVEN DAVID; TAMARA DAVID,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case is before the court on Motion for Summary Judgment filed by defendants Steven David and Tamara David, (doc. 25),[1] and defendants' Motion to Withdraw Admissions, (doc. 29). Upon consideration of the record, the submissions of parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Withdraw Admissions, (doc. 29), is due to be granted, and the Motion for Summary Judgment, (doc. 25), is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)).

## II. STATEMENT OF FACTS

Plaintiff Directional Publishing was "in the business of creating, producing, publishing, distributing and marketing artwork." (Doc. 1 ¶ 6.) It provided artwork to customers who needed art on their products. (*See* doc. 25, Ex. D at 6.) It owns the copyright

of original works of art including Sea Study I, Sea Study II, Recline Time I and Recline II ("the Directional Works"). (Doc. 1 ¶ 7.) In its Complaint, Directional alleges that the defendants – TamSan Design, Tamara David, and Steven David – "knowingly and willfully copied and distributed the Directional Works in their entirety . . . for the specific purpose of infringing Plaintiff's copyrights and selling illegal and unauthorized copies of the Directional Works." (*Id*. ¶ 12.)

Tamara David testified that she is a corporate officer and employee of TamSan Design. (Doc. 25, Ex. A.)[2] She also testified, "In my capacity in selecting artwork to be put on plates and barstools, I review various different designs sent to TamSan Designs, Inc. by various different parties, including Directional Publishing, Inc. My review of these artworks is done in my capacity as an employee of TamSan." (*Id*.)

Steven David testified that he is a shareholder in TamSan Design. (*Id*., Ex. B.) He said, "I had nothing personally to do with selection of the hand-painted decorative accessories . . . . I have no personal dealings with Directional Publishing. I have nothing personally to do with any copying and/or distributing any documents licensed to Directional Publishing." (*Id*.)

[2]The Davids refiled the Affidavits that they filed with the Motion to Dismiss. (*Compare* doc. 13, Exs. A and B *with* doc. 25, Exs. A and B.)

Directional Publishing filed the instant action on February 27, 2009. On June 8, 2009, following the parties' Rule 26 meeting, plaintiff served its First Request for Admissions on defendants, asking defendants to admit the following statements:

1. Admit that Defendants have contacts in Alabama.

2. Admit that Defendants market products to customers located in Alabama.

3. Admit that Defendants have made sales to customers located in Alabama.

4. Admit that TamSan Design, Inc. is subject to personal jurisdiction in Alabama.

5. Admit that Steven David is subject to personal jurisdiction in Alabama.

6. Admit that Tamara David is subject to personal jurisdiction in Alabama.

7. Admit that Directional Publishing Inc. owns valid copyrights for the Directional Works.

8. Admit that you currently do not, nor have you ever had a license to use the Directional Works.

9. Admit that you did not create the Directional Works.

10. Admit that you purposefully reproduced the Directional Works knowing that you did not have permission from Plaintiff.

11. Admit that you purposefully prepared a derivative work using the Directional Works knowing that you did not have permission from Plaintiff.

12. Admit that you purposefully distributed the Directional Works through public sale knowing that you did not have permission from Plaintiff.

> 13. Admit that you purposefully displayed the Directional Works knowing that you did not have permission from Plaintiff.
>
> 14. Admit that you violated Plaintiff's copyrights in the Directional Works.
>
> 15. Admit that Defendants owe $3,000,000.00 in damages to Plaintiff.

(Doc. 17, Ex. B.) Defendants did not respond to plaintiff's Requests for Admission. (*See id.*, Ex. E.) The court deemed defendants had admitted the Requests for Admissions pursuant to Fed. R. Civ. P. 36(a)(3). (Doc. 20 at 6-7.)

The Davids filed a Motion to Dismiss, (doc. 13), which the court denied based on the Davids' admissions, (doc. 20 at 8, doc. 21). In its Memorandum Opinion, the court noted that Rule 36(b) provided defendants could move to withdraw or amended their admissions. (Doc. 20 at 6-8 and n.2.) Addressing the merits of defendants' Motion to Dismiss, the court held that it had personal jurisdiction over defendant Tamara David, even if the court allowed her to withdraw her admissions. (*Id.* at 10-11.) Also, the court held:

> Mr. David appears to have been a passive participant in TamSan Design's business; therefore, he is liable, if at all, only for vicarious infringement. This passive, vicarious liability will not support a finding of specific personal jurisdiction. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008)("Mere negligent use of an infringing mark would not satisfy the *Calder*[3] test. Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." (citing *Calder*, 465 U.S. at 788-90)).
>
> Assuming defendants can show cause for allowing them to withdraw their admissions of personal jurisdiction, Mr. David's Motion to Dismiss

[3] *Calder v. Jones*, 465 U.S. 783 (1984).

> would be due to be granted and Ms. David's Motion to Dismiss would be due to be denied.

(*Id*. at 11-12 [footnote added].)

Approximately two months after the court denied their Motion to Dismiss, defendants sent responses to plaintiff's Requests for Admission. (*See* doc. 28 at 3; doc. 29 at 3.) On April 8, 2010 – a month after the close of discovery, three months after responding to the Requests for Admissions, and five months after the court invited a motion to withdraw – defendants filed a Motion to Withdraw Admissions. (Doc. 29.)

## III. DISCUSSION

### A. MOTION TO WITHDRAW ADMISSIONS

Rule 36(b) states, "Subject to Rule 16(e), the court may permit withdrawal or amendment [of a party's admissions] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The Eleventh Circuit has provided the following guidance in deciding motions to withdraw or amend an admission:

> Once the matter is admitted, Rule 36(b) provides that it is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b). A court "***may*** permit withdrawal or amendment [of an admission] ***when the presentation of the merits of the action will be subserved thereby*** and ***the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits***." *Id*. Based on this language, we have held that district courts should apply a "two-part test" in deciding whether to grant or deny a motion to withdraw or amend admissions.

*Smith v. First Nat'l Bank*, 837 F.2d 1575, 1577 (11th Cir. 1988). First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case. *Id.*; *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995); *FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994).

. . .

[W]e read Rule 36(b) as granting a district court discretion but then specifying exactly how that discretion is to be exercised. *See*, *e.g.*, *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000)("The court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than . . . on the moving party's excuses for an erroneous admission.")(citing 10A Federal Procedure L. Ed. § 26.500 (1988)(internal mark omitted)); *Asea, Inc., v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981)("In a proper case . . . such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal."); *Mid Valley Bank v. North Valley Bank*, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991)("[A]lthough the motion [to withdraw admissions] is, as the parties acknowledge, directed to the sound discretion of the court, the discretion should not be exercised in terms of the defaulting party's excuses, but in terms of the effect upon the litigation and prejudice to the resisting party.")(internal citations omitted). Rule 36(b)'s two-part test is much more than merely hortatory; it "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." *Smith*, 837 F.2d at 1577-78 (quoting Fed. R. Civ. P. 36 advisory committee's note) . . . .

While we stop short of holding that movants have "an absolute right . . . to have [their] admissions withdrawn," *Asea*, 669 F.2d at 1248, we nonetheless believe that, to best fulfill the purposes of Rule 36, a district court must abide by the two-part test of Rule 36(b). We hold, therefore, that a district court abuses its discretion under Rule 36(b) in denying a motion to withdraw or amend admissions when it applies some other criterion beyond the two-part test – or grossly misapplies the two-part test – in making its ruling. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313 (8th Cir. 1983) ("Regardless of the intentions of the district court to sanction [the party], we find the district erred in not considering the factors set out in [R]ule 36(b).").

*Perez v. Miami-Dade County*, 297 F.3d 1255, 1264-65 (11th Cir. 2002)(footnotes omitted; emphasis added; original emphasis deleted). The court's analysis of their Motion to Withdraw Admissions does not include an examination of the defendants' excuses for not filing a timely response to plaintiff's Request for Admissions.

**1. Subserve the presentation of the merits**

Certainly, in virtually every case, the withdrawal of admissions will promote or subserve the presentation of the merits of a case by allowing evidence to be heard regarding the material issues of a case rather than assuming such material issues have been decided in the manner compelled by the admission. Unless the admissions are withdrawn, there will be no presentation of the merits of the issues deemed admitted.

The court finds that allowing the Davids to withdraw their admissions subserves the presentation of the merits.

**2. Prejudice to Plaintiff**

The court finds that plaintiff will not be prejudiced by the withdrawal of the admissions. Therefore, the court will grant defendants' Motion to Withdraw Admissions.

Nevertheless, the court finds that plaintiff may be prejudiced by defendants' delay in filing their Response to plaintiff's Requests for Admission and the Motion to Withdraw Admissions. Defendants waited until after the close of discovery, after filing their Motion for Summary Judgment, and after plaintiff's Response to the Davids' Motion for Summary

Judgment before asking the court to set aside their Admissions. Therefore, the court will allow Directional the option of conducting additional discovery or proceeding to trial.

Based on the foregoing, defendants' Motion to Withdraw Admissions, (doc. 29), will be granted. The court has not considered defendants' Admissions in deciding the Davids' Motion for Summary Judgment.

**B. PERSONAL JURISDICTION**

The Davids ask the court to dismiss plaintiff's claims against them because "Alabama courts cannot properly assert jurisdiction over [the Davids] given that they do not have sufficient minimum contacts with this state." (Doc. 25 at 8 [Brief in Support of Motion for Summary Judgment at 5].)[4] Also, the Davids contend that personal jurisdiction over them is improper because they did not act outside the scope of their employment with TamSan Design and, therefore, the long-arm statute "cannot be extended to these individual defendants." (Doc. 25 at 12-13 [Brief in Support of Motion for Summary Judgment at 9-10].)

Although these issues are virtually identical to the issues raised in the Davids' Motion to Dismiss, the defendants do not discuss the court's Memorandum Opinion. With regard to these issues, the court has previously held:

> Defendants contend that they are due to be dismissed because this court lacks personal jurisdiction. Specifically, they contend:

---

[4]Defendants electronically filed their Motion for Summary Judgment and their Brief as one document. The court has included both the cite to the page number of the CM/ECF document as well as the page number reflected on the actual page of the brief.

> 4. It is evident that Tamara David and Steven David do not have sufficient minimum contacts with the state of Alabama for this court to confer personal jurisdiction over them. Any acts which may have involved the Plaintiff in the state of Alabama were done on a corporate level and in the individuals' capacities as employees of TamSan Design, Inc. A court cannot exercise personal jurisdiction over a defendant solely on the basis of the employer's contacts with the forum state. *Calder v. Jones*, 465 U.S. 783, 790 (1984). In fact, personal jurisdiction over an individual corporate officer or employee "may not be predicated upon jurisdiction over the corporation itself." *Thames v. Gunter-Dunn, Inc.*, 373 So. 2d 640, 641 (Ala. 1979).
>
> 5. The claims presented by Plaintiff are applicable to the corporate defendant only. This court does not have personal jurisdiction over the individual defendants, and therefore Tamara David and Steven David are due to be dismissed.

(Doc. 13 ¶¶ 4-5.) The court disagrees.

Generally, in cases alleging intentional conduct, "the applicable test [for the application of specific personal jurisdiction] is the 'effects' test utilized in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.28 (11th Cir. 2009). "Stated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.* (citing *Calder*, 465 U.S. 789-90; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998); *New Lenox Industries v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007)). In Alabama, an individual's conduct directed at the forum is sufficient to provide personal jurisdiction, even if the individual is acting on behalf of a corporation.

> "A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." *Sieber v. Campbell*, 810 So.2d 641, 645 (Ala. 2001). *See also Bethel v. Thorn*, 757 So.2d 1154, 1158 (Ala. 1999), and *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC*, 496 So.2d 774, 775 (Ala. 1986). Likewise, corporate agent status does not insulate the agent personally from his or her jurisdictional contacts with a state or from personal jurisdiction in the state. *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct.

> 1482, 79 L. Ed. 2d 804 (1984); *Sieber*, *supra*; *Sudduth v. Howard*, 646 So.2d 664, 668 (Ala. 1994); and *Duke* [*v. Young*], 496 So.2d [37,] 40 [(Ala. 1986)].

*Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001).

Plaintiff alleges (1) "Defendants have knowingly and willfully copied and distributed the Directional Works in their entirety . . . for the specific purpose of infringing Plaintiff's copyrights and selling illegal and unauthorized copies of the Directional Works;" and "the Davids directly committed the infringements and/or instructed others to commit the infringements," and "they had the power to supervise the infringing activities and had a direct financial interest and the profits earned there from." (Doc. 1 ¶¶ 12, 13.) Tamara David testified that she selected the artwork that appeared on TamSan Design products. (Doc. 13, Ex. A.) Steven David testified that he "had nothing personally to do with the selection of the hand-painted decorative accessories" and that he had "no personal business dealing with Directional Publishing." (*Id*., Ex. B.) Ms. David is an officer and employee of TamSan Design; Mr. David described himself as a shareholder. (*Id*., Exs. A and B.)

Basically, there are three types of liability for copyright infringements: (1) direct liability, (2) contributory liability, and (3) vicarious liability. *BUC Intern. Corp. v. International Yacht Council Ltd.*, 489 F.3d 1129, 1138 and n.19 (11th Cir. 2007). "Direct copyright infringement arises upon violation of the exclusive rights of a copyright holder under 17 U.S.C. § 501." *Id.* n.19. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)(citing *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963))(internal citations omitted). Both direct and contributory liability require proof of intentional conduct. The record contains sufficient evidence at this early stage of the proceedings to find that Ms. David engaged in intentional conduct directed at the forum with regard to the alleged copyright infringement of plaintiff's protected works. For purposes of deciding this Motion, the court finds that Ms. David received the copyrighted works and that she decided to use the works without permission of plaintiff. This conduct is sufficient to support the exercise of personal jurisdiction over Ms. David.

> However, Mr. David appears to have been a passive participant in TamSan Design's business; therefore, he is liable, if at all, only for vicarious infringement. This passive, vicarious liability will not support a finding of specific personal jurisdiction. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008)("Mere negligent use of an infringing mark would not satisfy the *Calder* test. Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." (citing *Calder*, 465 U.S. at 788-90)).
>
> Assuming defendants can show cause for allowing them to withdraw their admissions of personal jurisdiction, Mr. David's Motion to Dismiss would be due to be granted and Ms. David's Motion to Dismiss would be due to be denied.

(Doc. 20 at 8-12.)

Nothing in the Davids' Motion for Summary Judgment demonstrates any ground for changing the court's prior opinion that Tamara David had sufficient, specific contacts with Directional Publishing in Alabama to establish personal jurisdiction, while Steven David did not.

**C. SCOPE OF EMPLOYMENT**

The Davids argue:

> [C]ase law does not support bringing individual defendants into a case when their actions were wholly in an employee or representative capacity. The Alabama Supreme Court has stated that there "must be a showing that the individual officers engaged in some activity that would subject them to the state's long-arm statute before In personam jurisdiction can attach." *Thames v. Gunter-Dunn, Inc.,* 373 So. 2d 640, 642 (Ala. 1979). Without providing any examples of such activity, the long arm cannot be extended to these individual defendants. All that has been shown is that the individual defendants, namely Tamara David, were working with Directional Publishing in obtaining copyrights and contracts for artwork. No examples of how the individual Defendants have worked outside of this scope has ever been put to the

forefront of this case. In looking to *Thames,* the Court provides the following guidance:

> While it is sometimes proper to hold that a foreign corporation or bank whose agents acted in Alabama, and caused ramifications in this state, has sufficient contacts with the state to warrant jurisdiction, **it is a totally different matter to hold that individual officers have such minimum contacts.** In this case the officers have never been present in Alabama, and there was no proof that the appellees were conducting any personal business either through the use of the corporation as an alter ego, or through personal agents in this state. Thus this Court finds that the minimum contacts necessary to extend personal jurisdiction are lacking.
>
> …
>
> To allow personal jurisdiction over [the officers] when they acted solely in the furtherance of their official positions would be to extend the long-arm statute too far.

*Id.* at 643 (emphasis added).

Simply put, Plaintiff cannot point to any action taken by Steven David as one that intentionally targeted the Plaintiff relative to its designs, given that the Directional Publishing employees did not even work for him. As for Tamara David, she was the primary contact with TamSan Design, Inc., but all of the actions taken by her, as discussed in the deposition excerpts presented herein, were altogether related to her employment with TamSan Design, Inc. Alabama case law directs that activities performed within the scope of one's employment, without more, is insufficient to warrant an extension of the long-arm statute over those individuals.

(Doc. 25 at 9-10.)

The Davids raised this argument to the court in their Motion to Dismiss and the court rejected this argument in its Memorandum Opinion denying the Motion to Dismiss. (*See* doc. 13 ¶ 4; doc. 16 at 6-9; doc. 20 at 9-10.) The court herein rejects this argument again.

Alabama has expressly limited the fiduciary-shield law set forth in *Thames* in light of the Supreme Court's decision in *Calder*. *See Brooks v. Inlow*, 453 So. 2d 349, 353-58 (Ala. 1984)(citing, *inter alia*, *Calder v. Jones*, 465 U.S. 783 (1984); *Cagle v. Lawson*, 445 So.2d 564 (Ala. 1984); *Alabama Waterproofing Co. v. Hanby*, 431 So. 2d 141 (Ala. 1983)).

> Although personal jurisdiction over an individual corporate officer cannot be based solely on jurisdiction over the corporation, a corporate agent who personally participates, albeit in his capacity as such agent, in a tort is personally liable for the tort, and the status as an agent of the corporation does not insulate the agent personally from his jurisdictional contacts with a state.

*J.C. Duke & Associates General Contractors, Inc. v. West*, 991 So. 2d 194, 199 n.1 (Ala. 2008)(citing *Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001)("[C]orporate agent status ***does not*** insulate the agent personally from his or her jurisdictional contacts with a state or from personal jurisdiction in the state.")(citations omitted; emphasis added)). The Eleventh Circuit has held "the commission of an intentional tort by a non-resident defendant expressly aimed at a resident, the effects of which were suffered by the resident in the forum state, satisfies the 'effects test' established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789-90." *See Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1338 (S.D. Fla. 2010) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

The Complaint supports a claim that Tamara David was responsible for the decision to use plaintiff's protected works in violation of its copyright. The fact that she made such decisions in her capacity as the agent of TamSan Design does not shield her from suit in Alabama based on her intentional conduct directed at plaintiff. Ms. David has presented no

evidence that the use of the Directional Works did not infringe on plaintiff's copyrights. Therefore, Ms. David's Motion for Summary Judgment is due to be denied.

The court finds Stephen David was a "passive participant in TamSan Design's business," and his "passive, vicarious liability will not support a finding of specific personal jurisdiction." (*See* doc. 20 at 11.) Therefore, Mr. David's Motion for Summary Judgment is due to be granted and all claims against him will be dismissed based on a lack of personal jurisdiction.

**CONCLUSION**

For the foregoing reasons, the court is of the opinion defendants' Motion to Withdraw Admissions is due to be granted, that defendant Tamara David is not entitled to judgment as a matter of law and that defendant Stephen David is entitled to judgment as a matter of law. An Order granting defendants' Motion to Withdraw, (doc. 29), and granting in part and denying in part their Motion for Summary Judgment, (doc. 25), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 17th day of June, 2010.

Sharon Lovelace Blackburn

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE